**Stanley R. STOTT, Appellant,**

v.

**The STATE of Oklahoma,**

**No. F–75–218.**

Court of Criminal Appeals of Oklahoma.

July 9, 1975.

Douglas W. Sanders, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

OPINION

BLISS, Judge:

Appellant, Stanley R. Stott, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, LeFlore County, Case No. CRF–74–168, for the offense of Escape From Peniten-

tiary in violation of 21 O.S.1971, § 443. His punishment was fixed at a term of two (2) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Clay Costner who testified he was employed as a classification and records officer for the Ouachita Training Center near Hodgens, Oklahoma, in LeFlore County. He identified the training center as being a part of the Department of Corrections in the State prison system. He further testified that in his professional capacity he knew the defendant, whereupon he identified State's Exhibit No. 1 as being a certified copy of a judgment and sentence from Oklahoma County styled State versus Stanley Robert Stott, for the offense of Forgery in the Second Degree, After Former Conviction of a Felony and a term of ten (10) years' sentence. He then testified that on the 2nd day of December, 1974, the defendant was being held pursuant to this judgment and sentence.

John S. Wilson testified he was employed as a corrections officer at the Hodgens Center and that part of his duties at the center included conducting bed counts during the night and one before breakfast at approximately 6:45 a. m. He further testified that on the 2nd of December, 1974, he conducted a bed count at dormitory number 4, where the defendant resided at approximately 11:30 p. m., and later at the second bed count at approximately 1:30 a. m. he observed two beds empty. Pursuant to a procedural head count, the defendant and one inmate named Torez were found to be missing. He also testified the defendant did not have permission to exit or leave the dormitory.

Efton L. Godsby testified that he was employed with the Oklahoma Department of Corrections at Hodgens and that part of his duties as a Dormitory Officer included assignments to find escapees. He related that on the 3rd day of December, 1974, he received a call at home at approximately 3:00 a. m. regarding two escapees. He stated he proceeded to Hodgens where he assisted one Officer McDonald in commencing a search for the two missing inmates. He testified they were found approximately three and one half miles from Hodgens in a community social building at Zoe, Oklahoma. He related that one of the inmates was the defendant.

The State then rested its case-in-chief.

Defendant took the stand to testify in his own behalf. He related to the court his criminal and social background and, further, he admitted to being a homosexual. He testified he was billed into Hodgens in August, after which he had to borrow money from inmates who were loan sharks and also "sold his body" on several occasions in order to acquire money for personal supplies. He further stated that certain physical threats were made to him concerning his failure to repay the borrowed money and that he left Hodgens on the night of December 2, 1974, because he had been told he would be killed following the 11:30 bed count.

The defendant's first proposition asserts the trial court committed prejudicial and reversible error in overruling the defendant's motion for mistrial based on certain statements made by the prospective juror Moore during voir dire examination. The defendant contends that the prejudicial statements which occurred are represented by the conversation transcribed on pages 18, 19 and 20 of the transcript. The defendant fails to indicate with specificity as to which statement is that of which he now complains, and we will thus carefully examine the specific pages of the transcript, beginning at page 17, which state:

"MR. SANDERS. Mrs. Shupert, I am sure that you have observed my client sitting in the courtroom. Mr. Stott is a homosexual. He is not ashamed of it. He is proud of it. I would ask you ma'am to search your contience (sic) and tell me whether or not anything about him being what he is today would cause [you] to feel any animosity or prejudice against this man?

"MRS. SHUPERT: No, I thing this is a very personal thing with each individual.

"MR. SANDERS: Mr. Moore, the same question, sir?

"MR. MOORE: I spent twenty years in the army and I am used to men.

"MR. SANDERS: Well, of course I am sure that you know as do I that the army does not tolerate homosexuality?

"MR. MOORE: I am afraid that I would go along with the army.

"MR. SANDERS: I beg your pardon.

"MR. MOORE: I am afraid that I would have to go along with army.

"MR. SANDERS: Then I would assume that you do feel some prejudice or animosity toward him?

"MR. MOORE: Yes, sir.

"MR. SANDERS: If the court please, we would ask that Mr. Moore be excused for cause.

"THE COURT: Any objection? Does the State have any objection?

"MR. WARREN: Yes, your honor, we would like to *voir dire* him a little more on this.

"THE COURT: Alright, sir.

"MR. WARREN: Mr. Moore, you understand that we are not trying whether or not that he is a homosexual?

"MR. MOORE: That is right, sir.

"MR. WARREN: And the only thing that this jury is going to be determining is whether or not on the 2nd day of *May* he left the penitentiary down at Hodgens, do you understand that?

"MR. MOORE: I could answer the question but I don't think I could give him a fair shake on it.

"THE COURT: Alright, Mr. Moore, that is good enough for the court. Mr. Moore, you can be excused permanently, sir, and thank you for your services during this term and the clerk will mail you a check in a few days.

"MR. MOORE: Thank you, sir.

"COURT CLERK: Herbert Perkins.

"MR. SANDERS: If the court please, may I make a record?

"THE COURT: Yes, sir, let's get Mr. Perkins up there first. Alright, Mr. Sanders. Mr. Warren, would you get up there and see what Mr. Sanders is stating, sir?

"MR. SANDERS: Comes now the defendant, Stanley Stott, and respectfully moves for a mistrial based upon the statement just made by the juror who was just dismissed for cause. It is the position of this defendant that the statement made in open court by said juror will influence the jury panel to a degree that it would be impossible for him to receive a fair and impartial trial.

"THE COURT: Now, would you come and tell me what you have just dictated, please?

"(Conference at bench)

"THE COURT: Overruled. Let's go on with the case.

"MR. SANDERS: Exception, please."
(Tr. 17–20)

This Court has held on numerous occasions that the manner and extent of the examination of jurors, touching their qualifications, cannot be prescribed by any definite, unyielding rule, but rests to a large extent in the sound discretion of the trial judge. In the examination such latitude should be given the parties as will enable them to procure a jury free of outside influence, bias, or personal interest. See, *Vardeman v. State,* 54 Okl.Cr. 329, 20 P.2d 194 (1933); *Payne v. State,* Okl.Cr., 276 P.2d 784 (1954) and *Henderson v. State,* Okl.Cr., 385 P.2d 930 (1963). Regarding appellate review of the competency and qualification of jurors, this Court in *Rice v. Emerson,* 181 Okl. 51, 72 P.2d 498 (1937), adopted the language of the Supreme Court of Oklahoma in *Bradford v. Territory of Oklahoma ex rel. J. H. Woods,* 2 Okl. 228, 37 P. 1061, 1062, which reads as follows:

"Under this section the court must be satisfied that the juror will act fairly

and impartially, and in passing upon this question he must act judicially on the facts before him; and the conduct and appearance of the juror, his manner, and apparent candor or impartiality, are all to be considered by the court, together with his actions, in determining his fitness as a juror. * * * A very large discretion is vested in the court, in determining the competency and qualifications of jurors, and its action should never be disturbed by an appellate court unless an abuse of such discretion is clearly apparent."

After a careful examination of the aforementioned excerpts of the *voir dire* examination, we feel the trial court properly allowed the prosecution to inquire further as to the qualifications or possible implied bias of the prospective juror Moore. Such action was within the discretion of the judge. A further examination of the responses of the prospective juror does not reveal any statements which we feel aroused the prejudice of the jurors or prospective jurors present. This conclusion is axiomatic as each juror finally impanelled was extensively questioned regarding the homosexuality of the defendant which is the subject matter on pages 17, 18, 19 and 20 of the trial transcript.

For the above stated reasons we find the trial court properly overruled the defendant's motion for a mistrial and, thus, we find the defendant's first proposition to be without merit.

Defendant's second proposition asserts the trial court erred in not granting a mistrial based upon the fact that several of the jurors impanelled to try the instant case had previously sat in an escape case. Defendant thus complains of the action of the trial court in not sustaining his challenge of the prospective jurors for implied bias pursuant to 22 O.S.1971, § 660, which in pertinent part states:

"Implied bias, challenge for.—

\* \* \* \* \* \*

"5. Having served on a trial jury which has tried another person for the offense charged in the indictment or information."

We feel this issue was resolved many years ago by this Court in *Johnson v. State*, 1 Okl.Cr. 321, 97 P. 1059 (1908), wherein this Court stated:

". . . Defendant complains of the rulings of the trial court in the selection of the jury. Special objection is made to overruling the defendant's challenge to the juror J. P. Willis for implied bias. It appeared, upon the cross-examination of this juror, on his *voir dire*, that he had served on a jury in a capital case in another state, and that, as a result of the verdict of that jury, the defendant was dead. Defendant complains of the action of the trial court in not sustaining his challenge of the witness for implied bias. In support of this challenge, counsel cite paragraph 5 of section 5473 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903, which provides that a challenge for implied bias may be made against a juror for 'having served on a trial jury which has tried another person for the offense charged in the indictment.' As counsel strenuously insist in their brief that it was reversible error for the court to overrule this challenge, we will call their attention to the fact that, if they are correct, it would disqualify every man from jury service in a murder case who had ever served on the jury in any other murder case. To our minds it is clear that the Legislature never intended to produce any such result. The evident purpose was to disqualify those persons from sitting as jurors in a case who had previously sat as jurors in trying some other person for the same identical offense. The court, therefore, did not err in overruling the challenge made. But, let this be as it may, defendant cannot complain, because this juror was afterwards peremptorily challenged by defendant, and the record does not show that any incompetent juror was forced on defendant by virtue of his having been forced to exhaust a per-

emptory challenge upon the juror Willis. Error in overruling a proper challenge to a juror, only becomes ground for reversal when the defendant is forced to use one of his peremptory challenges on said juror, and the record shows that the defendant exhausted all of his peremptory challenges, and, that by reason of his having been forced to do this, an incompetent juror was forced upon him. This question has been repeatedly before appellate courts. In *Hudson v. State*, 28 Tex.App. 323, 13 S.W. 388, the court said: 'It was error to refuse to stand the juror aside; but the error becomes harmless in view of the fact that the juror did not sit upon the case, the defendant having rid himself of him by a peremptory challenge, and no objectionable juror having set upon the case.' The following Texas cases are to the same effect: *Holt v. State*, 9 Tex.App. 571; *Myers v. State*, 7 Tex.App. 653; *Grissom v. State*, 8 Tex.App. 386; *Hollis v. State*, 8 Tex.App. 620; *McKinney v. State*, 8 Tex.App. 626; *Cook v. State*, 8 Tex.App. 659. As the Texas Court of Criminal Appeals is probably the greatest appellate criminal court in the world, we might well rest our decision of this question upon these authorities alone. We will, however, cite Thompson on Trials. In section 115, p. 115, of volume 1, the author states that in some jurisdictions it is held that when a challenge for cause has been improperly overruled, and the defendant challenges the juror peremptorily, and exhausts all of his peremptory challenges on this account, there is room for the inference that the erroneous ruling may have resulted in having upon the panel other obnoxious jurors whom the party might, but for the ruling, have excluded by peremptory challenges; and then says: 'But others take what seem to be the better view, that it must also appear, not only that his per-

emptory challenges were exhausted, but that some objectionable person took his place on the jury, who otherwise would have been excluded by a peremptory challenge.' In support of this doctrine the author then cites a great number of cases, which lay down the same rule."

We further note that the defendant in the instant case does not propose that he exhausted all of his peremptory challenges, nor does the record itself reflect defendant utilized such challenges, and thus the defendant may not be heard to allege on appeal possible bias of any juror.

As this Court concluded in *Johnson, supra*, the legislature by enacting 22 O.S.1971, § 660(5), never intended for a prospective juror to be disqualified for implied bias and thus not impanelled for disposition of a case charging a defendant with crime "A" (e. g., rape, murder, etc.) because said prospective juror had previously been a juror in the disposition of a case charging another defendant with a similar crime "A" where both the crimes resulted from different transactions in each case and not from the same transaction or series of transactions. Thus, the defendant's challenge of the particular jurors for implied bias, in the instant case, for the reason that said jurors had previously been jurors on another distinct and separate escape case, arising from a different transaction or series of transactions, was properly overruled.

For the above stated reasons we find the defendant's second proposition to be without merit.

In conclusion, we observe the record is free of any error which would justify modification or reversal and the judgment and sentence appealed from is, accordingly, *affirmed*.

BRETT, P. J., and BUSSEY, J., concur.