1998 OK CR 8

**Billy Ray BATTENFIELD, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. PC–97–732.**

Court of Criminal Appeals of Oklahoma.

Jan. 21, 1998.

Bryan Lester Duple, Hossein Reza Parvizian, Oklahoma Indigent Defense Capital Post Conviction, Norman, for Petitioner.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Howard, Assistant Attorney General, Oklahoma City, for Respondent.

## OPINION AFFIRMING DENIAL OF POST–CONVICTION RELIEF

CHAPEL, Presiding Judge:

¶ 1 Billy Ray Battenfield was tried by a jury and convicted of First Degree Malice Aforethought Murder in violation of 21 O.S. 1991 § 701.7 in the District Court of Wagoner County, Case No. CRF–84–73. After finding that the murder was especially heinous, atrocious or cruel and that Battenfield constituted a continuing threat to society, the jury sentenced him to death.

¶ 2 This Court affirmed Battenfield's conviction and sentence in *Battenfield v. State*,[1] and subsequently denied his petition for rehearing. The United States Supreme Court denied Battenfield's petition for writ of certiorari on March 23, 1992.[2] On February 14, 1995, Battenfield filed an application for post-conviction relief in the District Court of Wagoner County, and then an amended application on April 13, 1995. The district court scheduled the matter for evidentiary hearing, which was held on November 22, 1996 and December 20, 1996. Battenfield filed his post-hearing brief on February 25, 1997 and the State filed its Response on March 12, 1997. The District Court of Wagoner County denied Battenfield's application on May 13, 1997. It is from this denial that Battenfield now appeals.[3]

¶ 3 In his first proposition of error, Battenfield argues that his case should be analyzed under the pre-*Walker*[4] standard of review for ineffective assistance of counsel claims. We agree, as *Walker* interpreted the amended Post–Conviction statutes which are not applicable in this case.[5]

¶ 4 Battenfield raises eleven (11) additional propositions of error. Even under the Pre–Amended Post–Conviction Procedure Act, 22 O.S.1991, § 1080–89, Post–Conviction review is strictly limited. Post–Conviction is not intended to provide a second appeal.[6] Issues which were raised and decided on direct appeal are barred by *res judicata*, and issues which could have been raised on direct appeal but were not are waived.[7]

¶ 5 In accordance with these rules, the following propositions of error are barred by waiver because they could have been raised on direct appeal but were not: Proposition VIII (claim that photographs were improperly admitted); Proposition X (challenge to instructions regarding the weighing of aggravating and mitigating circumstances);[8] Proposition XI (claim that the

---

1.  816 P.2d 555 (Okl.Cr.1991), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). Although this Court found insufficient evidence to support the heinous, atrocious or cruel aggravator, an independent reweighing of the remaining continuing threat aggravating circumstance against the mitigating circumstances resulted in an upholding of the death sentence. *Battenfield*, 816 P.2d at 565–67.

2.  *See, Battenfield v. Oklahoma*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992).

3.  Battenfield's Post–Conviction Application will be considered under the pre-amended Post Conviction Procedure Act found in 22 O.S.1994, §§ 1080–89 rather than under the amended Capital Post–Conviction statutes presently codified in 22 O.S.Supp.1996, §§ 1087 and 1089 which went into effect after Battenfield's case was filed. *See, Revilla v. State*, 946 P.2d 262, 97 OK CR 48 (Okl.Cr.1997). Our note of the change in the statutes in no way expresses whether or not

Battenfield's claims would be viable under the new post-conviction procedure act. *Id.*

4.  *Walker v. State*, 933 P.2d 327 (Okl.Cr.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (1997).

5.  See footnote 3, *supra*.

6.  *Stiles v. State*, 902 P.2d 1104, 1105 (Okl.Cr. 1995), *cert. dismissed*, 516 U.S. 1167, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996); *Fox v. State*, 880 P.2d 383 (Okl.Cr.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995).

7.  *Mann v. State*, 856 P.2d 992, 993 (Okl.Cr.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994).

8.  Appellant's reliance on *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) as an intervening change in the law is misplaced.

death penalty is under all circumstances cruel and unusual punishment). Therefore, these propositions will not be addressed.[9]

¶ 6   In his second,[10] third and sixth propositions of error, Battenfield argues that appellate counsel was ineffective for failing to: (a) raise critical errors in trial counsel's performance (Propositions IV and V—addressed as (a)(1–4) below);  (b) challenge the constitutionality of Oklahoma's continuing threat aggravator;  (c) raise as a proposition of error the admission of prejudicial photographs; and, (d) raise as a proposition of error the prosecutor's gender-based exclusion of female jurors.

¶ 7   To prevail on a claim of ineffective assistance of counsel, Battenfield must show: (1) that counsel's representation fell below an objective standard of reasonableness;  and, (2) a reasonable probability that the results of the proceedings would have been different if not for counsel's errors.[11]  Although appellate counsel is required to raise relevant issues for this Court to consider and address, counsel "need not raise every non-frivolous issue." [12]  We have carefully considered each of the instances of alleged ineffective assistance of counsel, and find that none of the

requirements under *Strickland* have been met.

*(a) failure to raise ineffective assistance of trial counsel:*

¶ 8   In deciding whether appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal, we must review the trial attorney's allegedly deficient performance.  In doing so, we "indulge a strong presumption that [the trial attorney's] conduct [fell] within the wide range of reasonable professional assistance...." [13]

¶ 9   In Propositions IV and V, Battenfield argues his trial attorney was ineffective for failing to investigate and present available mitigation evidence, including but not limited to:  (1) mental health evidence;  (2) familial testimony;  (3) testimony of prison personnel to describe the security where Petitioner would be incarcerated for the rest of his life; and, (4) forensic social worker testimony regarding Battenfield's life history.

■  ¶ 10  We begin by noting that a trial attorney's decision not to present mitigating evidence does not automatically render that

*Duckett v. State*, 919 P.2d 7, 23 (Okl.Cr.1995), *cert. denied,* — U.S. —, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997) (holding *Mills* does not change our analysis that this issue is without merit), *citing Stiles v. State*, 829 P.2d 984, 997 (Okl.Cr.1992).  Moreover, we will not reconsider our long line of cases denying this particular claim because Petitioner has cited a Federal District Court case;  such cases are not binding on this Court.  *See, LaFevers v. State*, 934 P.2d 356, 358 n. 9 (Okl.Cr.1997) (this Court will not reconsider its position on an issue based on a federal district court decision which is not binding on us);  *Brown v. State*, 933 P.2d 316, 323 (Okl.Cr. 1997) ("While it is true that the Supremacy Clause of the United States Constitution demands that state law yield to federal law, it is also true that neither the federal Supremacy Clause nor any other principle of law requires that this state court's interpretation of federal law give way to a lower federal court's interpretation.").

9.  The only exception is for those claims which also relate to Battenfield's allegations of ineffective assistance of appellate counsel.  Although issues not raised on direct appeal are technically waived, this is Battenfield's first chance to challenge appellate counsel's performance, and he

has done so.  Therefore, we will examine the allegations of error in admitting the complained-of photographs (Proposition VIII) and the alleged ineffectiveness of trial counsel (Propositions IV and V) insofar as they are dispositive of Battenfield's ineffective assistance of appellate counsel claims.  *Trice v. State*, 912 P.2d 349, 353–54 (Okl.Cr.1996), *citing Robedeaux v. State*, 908 P.2d 804, 806 (Okl.Cr.1995).

10.  Battenfield raises ineffective assistance of counsel for failing to raise the alleged gender-based strikes of female jurors as an alternative argument in Proposition II. This issue will also be addressed on its merits *infra*, as it involves an intervening change in the law.  *Fowler v. State*, 896 P.2d 566, 570 (Okl.Cr.1995), *overruled on other grounds, McCracken v. State*, 946 P.2d 672, 676 (Okl.Cr.1997).

11.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Fowler*, 896 P.2d at 569.

12.  *Fowler*, 896 P.2d at 569.

13.  *Trice*, 912 P.2d at 354, *citing Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

attorney ineffective.[14] Also important to our analysis is Battenfield's own strong objection to the presentation of mitigating evidence at the second stage of his trial. He refused to testify against the advice of his attorney.[15] He then waived his right to present mitigation in general, stating he did not want to call his parents because they had already been through enough.[16]

¶ 11 Battenfield now argues that he did not have a thorough understanding of mitigation and did not realize it encompassed more than familial testimony. Although his waiver was not as good as it might have been, it appears to have been made knowingly and voluntarily.[17] Even without the waiver, however, Battenfield has failed to show that trial counsel was ineffective by not presenting mitigating evidence. We have reviewed the Affidavits attached to Petitioner's Application and find they all contain evidence that Battenfield and his family could have presented to the jury had Battenfield cooperated with his attorney. Thus, the second, third and fourth allegations of ineffective assistance of trial counsel are a direct result of Battenfield's own refusal to testify and allow his parents to testify. We will not hold counsel responsible for a client's obstinate behavior.

¶ 12 This leaves only the first ground, failure to present mental health evidence, as a possible instance of ineffectiveness of counsel. However, Battenfield has failed to show that such expert testimony was necessary. He did not then and does not now suffer from mental illness, mental infirmity, or incompetence to stand trial.[18]

¶ 13 Furthermore, Battenfield has failed to show prejudice. The psychologist's conclusion that Battenfield was chemically dependent does nothing to undermine our confidence in the jury's determination that he constitutes a continuing threat to society. Accordingly, Battenfield has failed to show that his counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [19]

¶ 14 Additionally, the record indicates that appellate counsel's failure to challenge trial counsel's effectiveness was sound appellate strategy.[20] Appellate counsel's affidavit makes clear that he made a conscious decision to focus on issues he deemed most likely to garner relief, and forego less-meritorious arguments. This is a valid strategic decision which will not constitute ineffective

---

14. *Trice*, 912 P.2d at 355 n. 25 (citation omitted).

15. Tr.Vol.III, 1421. Battenfield informed the court, "I'm going against my attorney's advice and not taking the stand." The court inquired further and asked whether Battenfield had been pressured or forced into making this decision; Battenfield responded, "No, sir."

16. Tr.Vol.III, 1421–22.

17. We are mindful that our decision in *Wallace v. State*, 893 P.2d 504 (Okl.Cr.), *cert. denied*, 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160 (1995) had not yet been decided to guide the trial court. However, our reading of the record and the evidentiary hearing testimony assures us that Battenfield was fully cognizant of the consequences of his waiver. (*See, e.g.*, 11/22/96 Ev. Hrg.Tr. at 116, 119–20, 130). Moreover, when Battenfield's attorney took him before the judge to discuss Battenfield's wish to waive mitigation, this demonstrated counsel's awareness of the critical importance of this issue and the need to memorialize the waiver.

18. Dr. Phillip Murphy's affidavit states that Battenfield suffers "exclusively from alcohol dependence." Battenfield's alcohol addiction was certainly something Battenfield and his family knew at the time of his trial and could have shared with the jury; in fact, Dr. Murphy's evidentiary hearing testimony shows he relied heavily on self-reporting from Battenfield. In other words, Dr. Murphy's examination of Battenfield revealed no disease or defect unknown to Battenfield or his family, i.e., nothing that would have made an expert necessary at trial.

19. *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

20. "If trial counsel had requested experts on the record, then I would have raised that issue on direct appeal. * * * I believed I was going to win the case on direct appeal [because] the 'heinous, atrocious or cruel' aggravator would be invalidated. The status of the law at that time was that if one aggravator was invalidated, then the sentence was modified to life imprisonment. There was no reweighing **and if I had known that there was going to be a change in the law [and the Court would reweigh], I would have supplemented the record with mitigation.**" (Appendix A: Affidavit of Appellate Counsel) (emphasis added).

assistance.[21] We find no deficiency in the performance of either trial or appellate counsel in this case.

*(b) failure to challenge the continuing threat aggravator on direct appeal:*

¶ 15 Nor was appellate counsel ineffective for failing to challenge Oklahoma's continuing threat aggravator. We have repeatedly upheld the constitutionality of this aggravator.[22] Counsel will not be deemed ineffective for failing to raise a claim which this Court has consistently held to be meritless.

*(c) failure to challenge the admission of prejudicial photographs:*

¶ 16 Failing to raise the issue of allegedly prejudicial photographs in a case involving a grisly murder also does not constitute ineffectiveness. We repeat: declining to raise every conceivable issue does not render an attorney ineffective.

*(d) failure to raise alleged gender-based discrimination in jury selection:*

¶ 17 Three years after Battenfield's direct appeal was decided, the United States Supreme Court decided *J.E.B. v. Alabama.*[23] Battenfield now claims his direct appeal attorney was ineffective for failing to raise a gender-based discrimination claim based on *J.E.B.*, a case that did not exist when the direct appeal brief was filed. Counsel can hardly be considered ineffective for failing to raise an issue under these circumstances.[24]

¶ 18 A careful review of each of the issues raised under the rubric of ineffective assistance reveals that none merit relief. These propositions are denied.

¶ 19 In Proposition II, Battenfield argues that the prosecution exercised peremptory challenges in a discriminatory manner based on gender, in violation of his Fourteenth Amendment right to Equal Protection.[25] Although Battenfield has not raised this claim before, an intervening change in constitutional law provides sufficient reason for us to review the issue.[26] The prosecution in this case used its first six peremptory challenges to excuse six female jurors, all without objection. The State then waived its remaining three challenges, leaving five women to serve on Battenfield's jury.

¶ 20 Battenfield now argues the State cannot offer a gender-neutral reason for the excusal of the first six female jurors. However, we will not reach this question unless Battenfield can make a prima facie showing of intentional gender-based discrimination in the strikes.[27] "[W]ithout this showing there is no need to explain the basis of the challenge."[28] Battenfield has not met this requirement. He has shown only that

---

**21.** *See, e.g., Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). The *Barnes* opinion went on to note that a "brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular.'" *Barnes,* 463 U.S. at 753, 103 S.Ct. at 3313, citing Davis, *The Argument of an Appeal,* 26 A.B.A.J. 895, 897 (1940) and Godbold, *Twenty Pages and Twenty Minutes—Effective Advocacy on Appeal,* 30 SW.L.J. 801 (1976).

**22.** *Bryan v. State,* 935 P.2d 338, 365 (Okl.Cr.), *cert. denied,* —— U.S. ——, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997) (this Court has repeatedly held the continuing threat aggravating circumstance constitutional, specifically stating that "the phrase 'the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society' is clear and does not require further definition.").

**23.** 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

**24.** *Fowler,* 896 P.2d at 570.

**25.** *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**26.** *Fowler,* 896 P.2d at 570. *J.E.B.* was decided after Battenfield's direct appeal was handed down in July of 1991.

**27.** *Fowler,* 896 P.2d at 570, *citing J.E.B.,* 511 U.S. at 144–45, 114 S.Ct. at 1429–30.

**28.** *Id.*

the State excused six women and left five women to serve. This in no way suggests the State was deliberately and intentionally striking female jurors because of their gender.[29] Accordingly, this proposition is denied.

¶ 21 In Proposition VII, Battenfield requests that this Court adopt the recommendation of the American Bar Association and indefinitely stay all executions pending the implementation of new policies. Battenfield cites no caselaw in support of this claim and acknowledges that it meets none of the strictly construed prerequisites for capital post-conviction review. Accordingly, it will not be addressed.

¶ 22 In Proposition IX, Battenfield challenges this Court's practice of reweighing aggravating and mitigating evidence after one or more aggravating circumstances have been invalidated. At trial, Battenfield's jury found the existence of two aggravating factors: (1) that the murder was especially heinous, atrocious and cruel; and, (2) that Battenfield would probably commit criminal acts of violence that would constitute a continuing threat to society. On direct appeal, we found insufficient evidence to support the especially heinous, atrocious and cruel aggravator.[30] We then reweighed the remaining continuing threat aggravator against "any evidence which, in fairness and mercy, may be considered as mitigating," and found the death sentence to be factually substantiated and valid.[31] Neither this Court nor the United States Supreme Court has held that independent reweighing is unconstitutional, and we are not persuaded to so hold now.[32]

¶ 23 In Proposition XII, Battenfield claims the cumulative effect of the errors discussed above warrant relief. However, we have found no error; thus there is no cumulative error.[33] This proposition is denied.

## DECISION

¶ 24 Petitioner's Application for Post–Conviction Relief is **DENIED.**

STRUBHAR, V.P.J., and LANE and JOHNSON, JJ., concur.

LUMPKIN, J., concurs in result.

---

29. Additionally, Battenfield waived his last peremptory challenge. This waives any objection to the final composition of the jury. *Ross v. Oklahoma,* 487 U.S. 81, 87–90, 108 S.Ct. 2273, 2278–79, 101 L.Ed.2d 80, (1988) *(requiring defendants to exercise peremptory challenges in order to cure the trial court's error;* "the error is grounds for reversal only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him."), *citing Ferrell v. State,* 475 P.2d 825, 828 (Okl.Cr.1970); *Stott v. State,* 538 P.2d 1061, 1064–1065 (Okl.Cr.1975).

30. *Battenfield v. State,* 816 P.2d at 564–66.

31. *Battenfield,* 816 P.2d at 567.

32. *See, Clemons v. Mississippi,* 494 U.S. 738, 750, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725 (1990) (appellate reweighing of aggravating and mitigating circumstances is not at odds with contemporary standards of fairness, and neither is it inherently unreliable or likely to result in arbitrary imposition of the death penalty); *Davis v. State,* 888 P.2d 1018, 1022 (Okl.Cr.1995) (citations omitted) ("Nothing in appellate reweighing of aggravating circumstances is at odds with contemporary standards of fairness or inherently unreliable, and an appellate court may reweigh evidence in the absence of written jury findings concerning mitigating circumstances.").

33. *Fowler,* 896 P.2d at 571.