PRISCILLA R. OWEN, Circuit Judge, concurring: I write separately to provide additional reasons that habeas relief should be denied in this case. I In Pena-Rodriguez, the Supreme Court observed that before Rule 606(b)’s adoption the Court had “noted the possibility of an exception to the [common-law no-im-peaehment rule] in the ‘gravest and most important cases.’ ”[1] “Yet since the enactment of Rule 606(b),” the Court continued, it “has addressed the precise question whether the Constitution mandates an exception to [the common-law no-impeachment rule] in just two instances.”[2] Those two instances were Tanner,[3] in which “the Court rejected a Sixth Amendment exception for evidence that some jurors were under the influence of drugs and alcohol during the trial,”[4] and Warger,[5] in which “[t]he Court again rejected the argument that, in the circumstances there, the jury-trial right required an exception to the no-impeachment rule.”[6] The Court had noted in Warger that “[t]here may be eases of juror bias so extreme that, almost by definition, the jury trial right has been abridged. If and when such a case arises, the Court can consider whether the usual safeguards are or are not sufficient to protect the integrity of the process.”[7] Neither the Supreme Court nor this court has recognized an exception to Rule 606(b) in a case like the present one. An exception to the no-impeachment rulé should not be recognized here. Even assuming arguendo that one or more of the five jurors answered a material question dishonestly during voir dire, habeas relief remains unwarranted. The record amply supports, and in fact compels, the conclusion that Austin had resolved to accept all jurors that the State accepted and that if, during.wfr dire, the five.jurors had expressed the views contained in their post-trial statements, Austin would not have challenged any of those jurors for cause, because Austin’s trial strategy was to obtain the death penalty. Austin cannot now claim in a habeas proceeding that had he known the jurors’ actual views, or had he known that they had predilections and a bias in favor of the death penalty, he would have challenged them for cause and thereby preserved the issue for appeal or collateral review. The record is clear that 'he would not have challenged any of the five jurors for cause during the trial even had there been a basis for doing so. It is undisputed that when voir dire occurred, Austin intended to plead guilty, and after the jurors were seated, Austin entered a guilty plea in their presence. The jury was empaneled only to decide whether Austin would receive á life sentence or a death sentence. During closing arguments, Austin personally argued to the jury that, because of the nature of his crime and because of his past and future dangerousness, it should answer the two questions submitted in a way that would require imposition of the death penalty. The Supreme Court has never held that, consistent with a defendant’s' trial strategy, a defendant may knowingly accept a biased juror and then, after a change of heart in collateral proceedings, obtain automatic reversal because of that juror’s bias. To the contrary, the Supreme Court explained in McDonough Power Equipment, Inc. v. Greenwood, the primary case on which Austin relies, that “[i]t is not clear from the opinion of the Court of Appeals whether the information stated in Greenwood’s affidavit was known to respondents or their counsel at the time of the voir dire examination.”[8] Importantly, the Court admonished that “[i]f it were, of course, [defendants] would be barred from later challenging the composition of the jury when they had chosen not to interrogate [the potentially biased juror] further upon receiving an answer which they thought to be factually incorrect.”[9] The Supreme Court cited a decision from the Eighth Circuit in support of this conclusion,[10] which held that “ ‘[t]he right to challenge the panel or to challenge a particular juror may be waived, and in fact is waived by failure to seasonably object.’ ”[11] The Eighth Circuit explained that It is established that failure to object at the time the jury is empaneled operates as a conclusive waiver if the basis of the objection is known of [sic] might have been known or discovered through the exercise of reasonable diligence, or if the party is otherwise chargeable with knowledge of the ground of the objection.[12] Similarly, the Eleventh Circuit has held that reversal of a verdict is inappropriate when a defendant permits a potentially or actually biased juror to be seated as part of trial strategy.[13] The point of citing these authorities is twofold. First, Austin may well have elicited the same information that is contained in the jurors’ post-trial statements had he questioned these jurors during voir dire.[14] Second, and more importantly, even had the jurors expressed during voir dire what they said in their post-trial statements, Austin would llave had to have asserted a challenge for cause to have preserved a claim of juror bias for consideration on appeal or in a habeas proceeding. The record establishes that Austin would not have challenged them for cause, Prior to trial Austin declared that he would accept every juror that the State accepted and that he would not exercise any peremptory challenges,[15] During voir dire at least two of the jurors that Austin now contepds were biased made statements that should have at least prompted inquiry, if not challenges for cause, by Austin regarding bias or pre-judgment of the issues to be decided by the jury. During the voir dire of Juror Erwin, the following exchange occurred: ERWIN: There’s a few cases I think you should get the death penalty, but that’s just me.v PROSECUTION; Okay, and that would be what?. What cases would those be? ERWIN: Anything had to do with hurting the elderly— PROSECUTION: Okay. ERWIN:—or kids. PROSECUTION: Children? ERWIN: Children. .. . Similarly, during the voir dire of Juror Finnegan, this exchange occurred: PROSECUTION: Okay. ' All right. Now, why don’t you tell me, Mr. Finnegan, if you will, what your feelings are about the death penalty and what purpose do you think it serves in our society?.' FINNEGAN: Feelings? . PROSECUTION: Yes, sir. FINNEGAN: First,.it’s a necessary evil— -■ PROSECUTION: Okay. FINNEGAN:—I-would say.-And the reason being is that I’m a—what right do I have to take another life? However, along those same lines, there are certain crimes which I consider heinous crimes which I think the person, if he or she has absolutely no remorse and possesses [sic] a continuing threat, I could absolutely be in favor of. PROSECUTION: [W]hen you say “heinous crimes,” what types of offenses came to your mind where you thought the death penalty might be appropriate? FINNEGAN: Violent crimes against a child. PROSECUTION: Okay. FINNEGAN: That would be, you know—and purely innocent type of victim without any defense, something along those lines. That’s what first issue came to my mind. Though Austin’s sentence for the murder of a child would depend on the jury’s findings in favor of either life or death, Austin remained silent throughout. voir dire. He has offered no reason for failing to question Erwin or Finnegan as to. the views they expressed during voir dire regarding the death penalty when a child was the victim. He has not asserted in habeas proceedings that his counsel (himself) was ineffective for failing to question these jurors during voir dire or for failing to challenge them for cause. His only contention is that, if he had known during voir dire the substance of the five jurors’ post-trial statements, he would have had grounds to challenge each of them for cause. If grounds to remove them for cause did exist, and had those grounds been revealed during voir dire, then it would have been incumbent upon Austin actually to raise challenges for cause. Otherwise, as the Eighth Circuit cogently explained, “ ‘[i]f a defendant is allowed to ... forego challenges for-cause tó a biased juror and then allowed to have the conviction reversed on appeal because of that juror’s service, that would be equivalent to allowing the defendant to plant an error and grow a risk-free trial.’ ”[16] It rings hollow for Austin now to contend that had he known the five jurors’ views he would have challenged them for cause. Austin’s actions, and more importantly inactions, in declining to ask any questions during voir dire, deciding before trial to accept all jurors the State accepted, and declining to exercise any preemp-tory challenges are entirely consistent with his trial strategy, which he set forth in letters to the trial court. Prior to trial, Austin advised the trial-court that he was “still firm about [his] decision to not fight this case” and that “since [he was] not going to put up any type of defense,” he had “decided that it [was] not necessary for [him] to review [his] -case file.”[17] The Supreme Court has' never held that juror bias is structural error requiring automatic reversal. In addition to its discussion in McDonough,[18] the Supreme Court has indicated that when grounds for cause to challenge a juror are apparent, the defendant must properly preserve his right to challenge for cause. In Ross v. Oklahoma, a defendant in a capital case moved to excuse a potential juror for cause because that member of the venire “declared that if the jury found [the defendant] guilty, he would vote to impose death automatically.”[19] When the trial court refused to excuse the potential juror for cause, the defendant exercised a peremptory challenge to prevent the seating of that individual on the jury.[20] The Supreme Court’s actual holding in Ross was that the trial court had erred in refusing to strike the person for cause, but the Court “rejected] the notion that the loss of a peremptory challenge constitutes a violation of the .constitutional right to an impartial jury” because “[w]e have long recognized that peremptory challenges are not of constitutional dimension.”[21] The Court concluded that “[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.”[22] The Court also said that “[i]t is well - settled that the Sixth and Fourteenth Amendments-guarantee -a defendant-on trial fo'r his life the right to an impartial jury,”[23] but the sentence following that statement contained qualifiers matérial to the inquiry presently before us. The Court said, “[h]ad [the biased juror] sat on the jury that ultimately sentenced [the defendant] to death, and had the petitioner properly preserved his right to challenge the trial court’s failure to remove [the biased juror] for cause, the sentence would have to be overturned.”'[24] The prerequisite in the Court’s analysis of when a sentence would have to be overturned was a challenge for cause that was denied by the' trial court. The Supreme Court also discussed in Ross the requirement of. Oklahoma law “that a defendant who disagrees with the trial court’s ruling on a for-cause challenge must, in order to- preserve the claim that the ruling deprived him of a fair trial, exercise a peremptory challenge to remove the juror,” and that “[e]ven then, the error is grounds for reversal only if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him.”[25] In United States v. Martinez-Salazar, the Supreme Court reiterated that reversal would be “require[d]” when (1) a biased juror is seated after (2) the trial court erroneously overruled an objection that the juror should be excused for cause.[26] In Martinez-Salazar, a potential juror had indicated repeatedly and consistently that he would favor the prosecution,[27] and the trial court erred in failing to dismiss that person for cause.[28] The actual holding of the Supreme Court was that even though the defendant used a peremptory challenge to remove the biased member of the venire and subsequently exhausted his remaining peremptory challenges, the defendant was “not deprived of any rule-based or constitutional right,” because the jury that convicted him did not include a biased juror.[29] But, in dicta, the Court discussed when the seating of a biased juror “would require reversal.”[30] The Court first stated that had the district court’s erroneous refusal to dismiss the potential juror for cause “resulted] in the seating of [a] juror who • should have been dismissed for cause,” then “that circumstance would require reversal.”[31] The “circumstance” requiring reversal included the denial of a challenge for cause. The Court then quoted its statement in Ross: “‘Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court’s failure to remove [the juror] for cause, the sentence would have to be overturned.’ ”[32] The Supreme Court’s listings of “structural errors” that require automatic reversal do not include jury bias, either when it is raised in a direct appeal or in habeas proceedings.[33] A plurality opinion of the Supreme Court said in a direct criminal appeal that “[t]he right to an impartial adjudicator, be it judge or jury, is” among the constitutional rights can never be treated as harmless error.[34] But the Court has not held that automatic reversal is required whenever a biased juror is seated and a verdict is rendered by that jury. In Gomez v. United States, the Supreme Court quoted the plurality opinion in Gray,[35] but Gomez did not involve a biased juror. The Court held in Gomez, a direct criminal appeal, that the harmless error rule did not apply when, over the objection of the defendant, a magistrate judge exceeded his jurisdiction when he presided over the selection of a jury in a criminal case.[36] Prior to the Supreme Court’s decision in Olano,[37] more than one federal Circuit Court of Appeals held in the context of a direct criminal appeal that a defendant’s failure to raise a juror’s lack of impartiality would not be considered if the issue was not raised at trial and the factual basis of the bias claim was known at the time of trial. In United States v. Uribe, a direct criminal appeal involving convictions for drug trafficking, one of the defendants, Rave, recognized a juror during empanelment,[38] but Rave did not “raise the matter” in the trial court.[39] After a guilty verdict was returned, the juror testified that he had rented a hoist to Rave and “experienced some problems getting it back,” but “that, after some travail, Rave returned the equipment and paid for its use.”[40] There was also evidence that there were “hard feelings” between this juror and another defendant with whom Rave was jointly tried because the other defendant had not paid the juror for automobile repairs.[41] The First Circuit held that “[a]l-though Rave ... attempts to argue that [the juror’s] presence tainted his conviction, he never raised the matter below. He is, therefore, foreclosed on appeal.”[42] The court reasoned that “[s]urely, the raise-or-waive rule is, fully operative in respect to these rulings”[43] and that the “plain-error doctrine [is] to be invoked ‘sparingly’ and only to avert ‘miscarriage of justice.’”[44] Similarly, in United States v. Rodriguez-Garcia, a direct criminal appeal decided before Olano, the Tenth Circuit affirmed a conviction and refused to consider a claim of juror bias raised for the first time on appeal when .the basis for the bias could have been pursued with the trial court.[45] In that case, the defendant contended “that he did not receive an impartial jury as guaranteed by the Sixth Amendment and [was] therefore entitled to a new trial” because he knew and had worked at a hospital with one of the jurors, and that juror had not admitted to knowing him.[46] The defendant’s “counsel failed to challenge this juror” and raised the “claim of juror bias” for the first time on appeal.[47] The Tenth Circuit reasoned that “[t]his court has observed that ‘there may be situations where the litigant waives any objection to the composition of the jury by failing to pursue the matter in timely fashion [which] is consistent with the general rule that a defendant, by accepting a jury, waives his right to object to the panel.’ ”[48] This decision likewise indicates that the Tenth Circuit did not view potential juror bias known to a defendant or counsel as automatically requiring reversal when no for-cause challenge was raised in the trial court.[49] Even after Olano, as discussed above, the Eighth Circuit has held that when the basis for a bias claim is known at the time of trial and no for-cause challenge is made, a defendant cannot obtain reversal on appeal, because that would be tantamount to insuring a risk-free trial.[50] In Johnson, Juror S.R. stated during voir dire that there was a possibility that she could not be objective and might give more weight or find more credible the testimony of a law enforcement officer because her former roommate and very good friend was a parole and probation officer.[51] The Eighth Circuit concluded that “by failing to object to the seating of Juror S.R. during voir dire, [the defendant] ‘intentionally] relinquish[ed] or abandoned] ... a known right’” within the meaning of Olano and “thereby waived his right to challenge the impaneling of an allegedly biased juror on direct appeal."[52] The Eighth Circuit also disavowed a prior decision in a habeas proceeding that had reasoned “[wjhen a defendant fails to object to the qualifications of a juror, he is without remedy-.only if he fails to prove actual bias,” reasoning that the habeas decision was contrary to an earlier opinion of the Eighth Circuit, which controlled.[53] The court further expressed its conclusion that the earlier decision correctly set forth the standard of review since otherwise a defendant could choose to withhold an objection for cause, await a verdict, then appeal and reverse an adverse judgment.[54] In the present case, the district court denied Austin’s juror bias claim on the sole basis that “Austin had an opportunity to question the potential jurors, and challenge those he thought unsuitable, but he chose not to do so”[55] and that “[h]e has therefore waived this claim.”[56] In our order granting a COA on Austin’s juror bias issue, we said that “claims based on actual bias, as opposed to implied bias, are not waived by a failure to object during voir dire.”[57] This was not intended as an all-encompassing, broadly sweeping proposition of law. The sole decision we cited for this statement was vacated in its entirety by the grant of en banc rehearing in our court[58] and therefore was not a prece-dential decision. Additionally, the statement in the vacated opinion was dicta.[59] A claim of actual bias may be raised even if no objection was made during voir dire, depending on the facts of a particular case and its procedural posture. This would be the case, for example, when neither a defendant nor her counsel had a reason to know of the bias and voir dire questioning would not have revealed the bias. But the decided weight of the authorities in this area, discussed above, concludes that there are circumstances when the. failure to object or move to strike a juror for cause precludes reversal of the verdict on appeal or in habeas proceedings based on juror bias. To be clear, I am not suggesting that .Austin waived his. claim of juror bias by failing to question the jurors during voir dire. Rather, an alternate ground for affirming the district court’s judgment regarding the jury bias claim is that one of McDonough’s requirements—that besides showing “that.a juror failed to answer honestly a material question on voir dire” a claimant must “further show tha,t a correct response would have provided a valid basis for a challenge for cause”[60]—necessarily assumes that, had voir dire provided a valid basis'for making a for-cause challenge, the claimant would have made the challenge, Because Austin made a conscious decision as a matter of trial strategy to accept all jurors accepted by the State, and because the record supports the conclusion that Austin would not have challenged the jurors for cause had they expressed during voir dire what they expressed in the post-trial statements, Austin cannot now say that he has met Mc-Donough ⅛ requirements. II It is unclear whether, in a habeas proceeding, a defendant would be entitled to have a jury’s verdict set aside upon establishing the elements of McDonough, without an assessment of the impact of the constitutional error on the state-court criminal trial. It is also unclear whether 28 U.S.C. § 2111 applies. It provides that “[o]n the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.”[61] It would seem that in many if not most cases when both prongs of McDonough are met the impact on the trial would obviously be injurious or the substantial rights of a party would be affected. But the present case is a relatively unusual one. To the extent that the analysis set forth by the Supreme Court in Fry v. Pliler,[62] and Brecht v. Abrahamson[63] applies, any constitutional error that occurred because any one of the five challenged jurors participated in the verdict did not have a substantial and injurious impact on the verdict. In assessing harmlessness on direct review, the Government bears the burden of proving that a constitutional error was “harmless beyond a reasonable doubt.”[64] On collateral review, however, “concerns about finality, comity, and federalism,”[65] mandate that a federal habeas petitioner bears the burden, and the standard is whether the error actually prejudiced him.[66] To determine whether an error actually prejudiced the petitioner, courts inquire whether the error had “a substantial and injurious effect or influence” on a jury verdict,”[67] meaning “there is more than a mere reasonable possibility that it contributed to the verdict.”[68] In this case, Austin’s guilt was not in question. He pled guilty. During the trial on the question of the appropriate penalty—life or death—Austin consistently vocalized and pursued a strategy designed to persuade the jury to answer the Texas special issues such that he received the death penalty. Austin did not testify.[69] He did cross-examine one witness and make a closing statement; during both, he only contested the State’s suggestion to the jury that he was a pedophile.[70] Austin expressed to the jury at closing that he would kill again and explained why the jury should answer the special issues such that he received a death sentence.[71] Although some evidence of Austin’s mental health history was presented to the jury during the sentencing phase, Austin himself presented no mitigating evidence. It cannot be said that any error had a substantial and injurious effect on the verdict. . Pena-Rodriguez v. Colorado, — U.S. —, 137 S.Ct. 855, 865-66, 197 L.Ed.2d 107 (2017) (quoting United States v. Reid, 12 How. 361, 366, 13 L.Ed. 1023 (1852) and McDonald v. Pless, 238 U.S. 264, 269, 35 S.Ct. 783, 59 L.Ed. 1300 (1915)). . Id. . Tanner v. United States, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). . Pena-Rodriguez, 137 S.Ct. at 866 (citing Tanner, 483 U.S. at 125, 107 S.Ct. 2739). . Warger v. Shauers, — U.S. —, 135 S.Ct. 521, 190 L.Ed.2d 422 (2014). . Pena-Rodriguez, 137 S.Ct. at 866 (citing Warger, 135 S.Ct. at 529). . Warger, 135 S.Ct. at 529 n.3. . McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 550 n.2, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). . Id. . Id. (citing Johnson v. Hill, 274 F.2d 110, 115-116 (8th Cir. 1960)). . Johnson, 274 F.2d at 116 (quoting Batsell v. United States, 217 F.2d 257, 260 (8th Cir. 1954) (citing Carruthers v. Reed, 102 F.2d 933, 939 (8th Cir. 1939))). . Id. (quoting Batsell, 217 F.2d at 260 (citing 50 C.J.S. Juries § 251)); see also United States v. Pennington, 168 F.3d 1060, 1067 (8th Cir. 1999) (holding in a direct criminal appeal that the defendant "waived this [juror bias] issue by not challenging the juror when the jury was empaneled because the basis for the objection was then known”). But see Franklin v. Anderson, 434 F.3d 412, 426-28 (6th Cir. 2006) (holding in a habeas proceeding that a juror "was biased because she could not understand the law,” that "[t]here is no situation under which the impaneling of a biased juror can be excused,” that "the State can [accordingly] make no argument that [the defendant’s] trial counsel acted strategically in keeping [the biased juror] on the panel” and that ”[t]o. permit this would be to allow trial counsel to waive the defendant's right to an impartial jury”). . See generally United States v. Simmons, 961 F.2d 183, 186 (11th Cir. 1992) (holding that a district court did not commit plain error by failing to excuse, sua sponte, certain jurors for cause, because defense counsel’s failure to exercise two remaining peremptory strikes "may well have been a strategic decision to retain the four jurors in question”). . See generally Robinson v. Monsanto Co., 758 F.2d 331, 335 (8th Cir. 1985) (holding in a civil case that "the right to challenge a juror is waived by failure to object at the time the jury is empaneled if the basis for objection might have been discovered during voir dire"). . See generally Reporter’s Record vols. 3-8; CR at 20. . United States v. Johnson, 688 F.3d 494, 501-02 (8th Cir. 2012) (quoting United States v. Brazelton, 557 F.3d 750, 755 (7th Cir. 2009) (internal quotations marks and citations omitted)). . CR at 58 (letter from Austin to the trial court dated Feb. 19, 2002). . McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 550 n.2, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). . Ross v. Oklahoma, 487 U.S. 81, 83-84, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). . Id. at 84, 108 S.Ct. 2273. . Id. at 88, 108 S.Ct. 2273. . Id. . Id. at 85, 108 S.Ct. 2273. . Id. (emphasis added). . Id. at 89, 108 S.Ct. 2273 (citing Ferrell v. State, 475 P.2d 825, 828 (Okla. Crim. App. 1970) and Stott v. State, 538 P.2d 1061, 1064-1065 (Okla. Crim. App. 1975)). . United States v. Martinez-Salazar, 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (citing Ross v. Oklahoma, 487 U.S. 81, 85, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)). . Id. at 308, 120 S.Ct. 774. . Id. at 307, 120 S.Ct. 774 (“We focus on this sequence of events: the erroneous refusal of a trial judge to dismiss a potential juror for cause, followed by the defendant’s exercise of a peremptory challenge to remove that juror.”). . Id. . Id. at 316, 120 S.Ct. 774. . Id. (quoting Ross, 487 U.S. at 85, 108 S.Ct. 2273). . Id. (alterations in original) (quoting Ross v. Oklahoma, 487 U.S. 81, 87, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)). . See, e.g., Weaver v. Massachusetts, — U.S. —, 137 S.Ct. 1899, 1907-09, 1911, 198 L.Ed.2d 420 (2017) (explaining in a habeas proceeding that "[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial”; identifying "three broad rationales” for why the Court has sometimes deemed a particular error structural: (1) when "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest” and, "when exercised, 'usually increases the likelihood of a trial outcome unfavorable to the defendant,’ ” such as "the defendant’s right to conduct his own defense”; (2) when the "effects of the error are simply too hard to measure,” such as the denial of a defendant’s "right to select his or her own attorney”; and (3) when “the error always results in fundamental unfairness,” such as denying an indigent defendant an attorney or failing “to give a reasonable-doubt instruction”; emphasizing that "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every case”; and holding that "when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, Strickland prejudice is not shown automatically”); United States v. Davila, 569 U.S. 597, 611, 133 S.Ct. 2139, 2149, 186 L.Ed.2d 139 (2013) (explaining that the Court has "characterized as ‘structural’ 'a very limited class of errors’ that trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole” and observing that “[ejrrors of this ldnd include denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt”) (citations omitted); Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (identifying as structural errors “complete denial of counsel,” "biased trial judge,” "racial discrimination in selection of grand jury,” "denial of self-representation at trial,” "denial of public trial,” and “defective reasonable-doubt instruction”). But see, e.g., Gray v. Mississippi, 481 U.S. 648, 668, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987) (Blackmun, J., plurality opinion), (holding in a direct criminal appeal that a harmless-error analysis did not apply when a state trial court excused a prospective juror for cause even though the juror was qualified to serve and had not exhibited bias). . Gray, 481 U.S. at 668, 107 S.Ct. 2045. . Gomez v. United States, 490 U.S. 858, 876, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (quoting Gray, 481 U.S. at 668, 107 S.Ct. 2045). . Id. . United States v. Olano, 507 U.S. 725, 732-37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) .(explaining, in a direct criminal appeal, the plain-error doctrine embodied in Fed. R. Crim. P. 52(b), and setting forth its elements). . 890 F.2d 554, 560 (1st Cir. 1989). . Id. at 560 n.4. . Id. at 560. . Id. . Id. at 560 n.4. . Id. (citing United States v. Griffin, 818 F.2d 97, 100 (1st Cir. 1987) and United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). . Id. (quoting Frady, 456 U.S. at 163 n.14, 102 S.Ct. 1584). . United States v. Rodriguez-Garcia, 983 F.2d 1563, 1572-73 (10th Cir. 1993). . Id. at 1572. . Id. . Id. at 1572-73 (alteration in original) (quoting United States v. Diaz-Albertini, 772 F.2d 654, 657 (10th Cir. 1985)). . See also United States v. Harris, 530 F.2d 576, 579-80 (4th Cir. 1976) (rejecting in a direct criminal appeal the defendant's contention that "one of the jurors knew him before trial and may have been prejudiced against him,” reasoning that “[w]here the basis for a challenge to a juror could be timely shown the failure of the defendant'to object at the ‘ inception of the trial constituted a waiver of his 'right to challenge the constitution of the jury”). . See United States v. Johnson, 688 F.3d 494, 501-02 (8th Cir. 2012). . Id. at 500. . Id. at 501. . Id. (citing and quoting Johnson v. Armontrout, 961 F.2d 748, 751 (8th Cir. 1992)). . Id. at 501-02. But see United States v. Brown, 26 F.3d 1124, 1126 (D.C. Cir. 1994) (concluding that "plain error analysis is applicable to a sixth amendment claim not raised at trial”). . ROA.2799 (citing 3 Tr. at 3-79; 4 Tr. at 3-66; 5 Tr. at 3-90). . Id. . Austin v. Davis, 647 Fed.Appx. 477, 493 (5th Cir. 2016). . Id. at 493 n.64 (citing United States v. Wilson, 116 F.3d 1066, 1086-87 (5th Cir. 1997), rev’d on other grounds, United States v. Brown, 161 F.3d 256, 258 (5th Cir. 1998) (en banc)). . See Wilson, 116 F.3d at 1087. . McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). . 28 U.S.C. § 2111. . 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007). . 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). . Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). . Fry v. Pliler, 551 U.S. 112, 116, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007). . Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); see also Fry, 551 U.S. at 117, 121-22, 127 S.Ct. 2321 (noting that Brecht "clearly assumed that the Kotteakos standard would apply in virtually all § 2254 cases” and "suggested an exception only for the 'unusual case’ in which 'a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, ... infects the integrity of the proceeding’ ” and holding that the Brecht standard applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt’ standard set forth in Chapman"); Hogue v. Johnson, 131 F.3d 466, 498-99 (5th Cir. 1997) (concluding that the Brecht standard applies to determine whether a constitutional error was harmless in a federal habeas challenge even when no state court reviewed petitioner’s claim and therefore never determined whether the error was harmless). . Brecht, 507 U.S. at 637, 113 S.Ct. 1710; see also Fitzgerald v. Greene, 150 F.3d 357, 366 (4th Cir, 1998) ("Based upon the forgoing circumstances, combined with the overwhelming evidence of Fitzgerald’s guilt, his propensity for future dangerousness, and the vileness of his crimes, we are confident that Bradshaw's presence on the jury did not result in actual prejudice to Fitzgerald.”). . Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir. 1996) (emphasis in original); see also United States v. Bowen, 799 F.3d 336, 356 (5th Cir. 2015). . 10RR78. . 9RR125-26; 11RR15-18. . 11RR16, 19-20.