# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-70024

PERRY ALLEN AUSTIN,

Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2016

Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-2387

---

Before OWEN, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Pursuant to 28 U.S.C. § 2254, Perry Allen Austin, a Texas death-row inmate, requests a certificate of appealability (COA) following the district court's denial of his petition for a writ of habeas corpus and request for an evidentiary hearing. Austin raises twenty-one (21) issues. His request for a COA is granted in part and denied in part.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-70024

**I**

Because Austin's claims relate primarily to his alleged mental illness, we begin by briefly outlining his mental-health history. In 1975, at age fifteen, Austin attempted suicide and was diagnosed with an adolescent adjustment reaction in a mixed personality. In 1978, he raped one of his adolescent sisters at gunpoint and attempted to rape another, before robbing a third, older sister and his mother. Awaiting trial, he again attempted suicide, and a psychiatrist diagnosed him as having a "severe personality disturbance with schizoid thinking and anti-social features" and "latent borderline schizophrenia." A jury convicted Austin of rape, attempted rape, and aggravated robbery.

Following this conviction, Austin was released on parole in 1991 and began a sexual relationship with J.O., a fourteen-year-old female. Through J.O., Austin met D.K., a nine-year-old male. D.K. disappeared in August 1992. While investigating D.K.'s disappearance, police discovered Austin's relationship with J.O. and charges were brought against Austin. He pled guilty to sexual assault of a child and received a thirty-year sentence. In April 1993, D.K.'s remains were found. Although there was physical evidence connecting Austin to D.K.'s murder and Austin admitted that D.K. had been in his vehicle the day of D.K.'s disappearance, police did not believe they had sufficient evidence to prove Austin was responsible for D.K.'s murder.

Austin alleges that prison conditions caused his mental health to deteriorate after he was incarcerated for sexually assaulting J.O. In 1995, he stabbed another prisoner and received an additional twenty-year sentence. By this point, Austin was confined in administrative segregation.

In September 2000, Austin wrote a letter to a Houston police officer, stating that he would confess to D.K.'s murder if he would be guaranteed the death penalty. Austin was interviewed at the state prison and confessed orally and in writing to slitting D.K.'s throat with a knife because Austin was angry

2

No. 13-70024

at D.K.'s brother for allegedly stealing drugs from Austin's car. Austin was indicted for capital murder on February 15, 2001. On March 21, Mack Arnold was appointed to represent Austin.

On May 15, 2001, Austin sent a letter to the state trial court asking to waive counsel and plead guilty. He indicated he would accept a death sentence and not appeal. He also stated that his mental stability was declining and that he had resumed the use of drugs. Arnold filed a motion to have Dr. Jerome Brown, a clinical psychologist, examine Austin. The court granted the motion on July 13. On July 19, Austin sent a letter to the court asking to be removed from administrative segregation, stating that he was suffering from depression and frequently contemplated suicide. During an in camera conference, the court told Austin that a psychological evaluation must occur before the *Faretta*[1] hearing, which would address whether Austin was competent to waive counsel.

Dr. Brown interviewed Austin on September 20 and prepared a report. The report acknowledged Austin's use of alcohol and psychotropic drugs in prison, but otherwise, it did not mention any past or present mental health issues. Dr. Brown found that Austin did not show signs of mental illness and concluded that he was competent to stand trial.

The state court held a *Faretta* hearing on October 11, 2001. The court expressly relied on Dr. Brown's report. Arnold, Austin's counsel, opined that Austin was competent. The court's questions to Austin primarily focused on his understanding of the possible consequences of representing himself and of the charges against him, but the court asked four questions about Austin's mental-health history. Arnold briefly questioned Austin, inquiring only about Arnold's representation of Austin. The court issued findings and granted

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

3

No. 13-70024

Austin's motion to proceed to trial *pro se* but appointed Arnold as standby counsel.

Austin did not participate in jury selection and pleaded guilty. During the punishment phase, Austin briefly cross-examined one witness about his relationship with J.O. In closing argument, Austin contended that he was not a pedophile, but with respect to Texas's two special-issues, he told the jury that he would commit further acts of violence in prison and that there were no mitigating circumstances. The jury answered Texas' special issues such that a death sentence was imposed.

The court held a second *Faretta* hearing in which Austin waived appellate counsel. The state court appointed standby appellate counsel. Austin's case was automatically appealed to the Texas Court of Criminal Appeals (TCCA). He filed no brief, and the TCCA affirmed his conviction.[2] Two months later, the state trial court found Austin competent and permitted him to waive the right to habeas counsel. Proceeding *pro se*, Austin waived the pursuit of post-conviction relief. Six days before his scheduled execution date, Austin moved to have state habeas counsel appointed and indicated he wished to pursue post-conviction relief. The trial court withdrew the execution date and appointed counsel, but the TCCA denied Austin's motion to file an untimely habeas petition.[3]

Austin timely filed a federal habeas petition. The State argued that Austin's claims were procedurally defaulted, but the district court held that the TCCA applied a new rule that could not be the basis of a procedural default.

---

[2] *See Austin v. State*, No. 74372, 2003 WL 1799020 (Tex. Crim. App. Apr. 2, 2003).

[3] *See Ex Parte Austin*, No. 59,527-01 (Tex. Crim. App. July 6, 2004), *available at* http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=a0dc5220-2918-4cff-a1fc-57bb35291ce7&coa=coscca&DT=OPINION&MediaID=852244e8-e3f3-4d2d-b424-7c05a03bb9f3.

No. 13-70024

The court denied Austin's motion for an evidentiary hearing, granted summary judgment to the State, and denied Austin a COA. Austin now seeks a COA from this court.

## II

As an initial matter, the State contends, in a lengthy footnote in its brief, that the federal district court erred in concluding that Austin's claims for relief (other than Issue 21 in our court) were not procedurally defaulted. The TCCA held that Austin's application for habeas relief was untimely. That court reasoned that under Tex. Crim. Pro. Art. 11.071 § 4(a), which required Austin to file his habeas petition no later than 180 days after the appointment of counsel or 45 days after the State's brief was filed, Austin's petition was time-barred after 45 days had passed following the State's waiver of its right to file a brief. The federal district court concluded that since Austin's case was the first in which the TCCA had construed § 4(a) in this manner, it was not a procedural rule that was regularly followed and therefore could not be the basis for procedurally defaulting Austin's state habeas claims.

Because reasonable jurists could debate whether the TCCA's ruling was one that could serve as an adequate state procedural ground on which to deny federal habeas review, we do not resolve the question today. We will consider it in connection with the appeal of the issues on which we today grant a COA to Austin.

## III

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[4] requires a federal habeas petitioner to obtain a COA before an appellate court may review a district court's denial of relief.[5] A COA may issue if the applicant

---

[4] Pub. L. No. 104-132, 100 Stat. 1214.

[5] *See* 28 U.S.C. § 2253(c)(1)(A).

has "made a substantial showing of the denial of a constitutional right."[6]  A petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[7]  In a death penalty case, we resolve "any doubts as to whether a COA should issue" in the petitioner's favor.[8]

If claims have been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d) applies.  Under § 2254(d), a federal court's review is limited to "the evidence presented in the state court proceeding."[9]  Further, a federal court may not grant relief unless a state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[10]

A clear-and-convincing-evidence standard under § 2254(e)(1) applies to a state court's factual determinations.[11]  This provision attaches a presumption

---

[6] *Id.* § 2253(c)(2).

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

[8] *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004) (quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000)).

[9] 28 U.S.C. § 2254(d)(2); *see also Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (limiting review under § 2254(d)(1) to the record before the state court that adjudicated the claim on the merits).

[10] 28 U.S.C. § 2254(d)(1)-(2).

[11] *See Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) ("The clear-and-convincing evidence standard of § 2254(e)(1)—which is 'arguably more deferential' to the state court than is the unreasonable-determination standard of § 2254(d)(2)—pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." (footnotes omitted) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010))).

of correctness to a state court's "determination of a factual issue" and requires a petitioner to rebut this presumption by "clear and convincing evidence."[12]

We apply the ordinary summary judgment standards, except when they conflict with the habeas rules.[13]    When § 2254(e)(1)'s presumption of correctness attaches to a particular state court finding of fact, it "overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party."[14]

Austin also challenges the district court's denial of an evidentiary hearing. We review the application of § 2254(e)(2) de novo,[15] but we review the district court's decision to grant or deny an evidentiary hearing for abuse of discretion.[16]

We will identify the issues Austin has presented in our court by the same number Austin has used in his brief in our court. In many instances, Austin has included in a parenthetical following his statement of an issue a reference to the Roman numeral he assigned to claims he asserts that he presented in his federal district court application for a writ of habeas corpus. We include Austin's parenthetical references.

## IV

Austin contends that the district court erred in denying his motion for an evidentiary hearing (Issue 1). He argues that neither 28 U.S.C. § 2254(d) nor the Supreme Court's decision in *Cullen v. Pinholster*[17] apply because there

---

[12] 28 U.S.C. § 2254(e)(1).

[13] *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

[14] *Id.*

[15] *Conner v. Quarterman*, 477 F.3d 287, 293 (5th Cir. 2007).

[16] *See Schriro v. Landrigan*, 550 U.S. 465, 475 (2007).

[17] 563 U.S. 170 (2011).

was no decision on the merits in state court. He further contends that § 2254(e)(2)[18] does not apply unless the applicant has shown a lack of diligence in failing to develop the factual basis of a claim in state court proceedings. He argues that he "pursued claims in state court through the filing of his state post-conviction petition but it was defaulted [by the Texas Court of Criminal Appeals] applying a new rule of Texas procedure." He asserts that there are factual disputes regarding his mental state and its impact on his waiver of counsel and his guilty plea, and that if these factual issues are resolved in his favor, he would be entitled to relief.

Jurists of reason can debate whether Austin has satisfied § 2254(e)(2)'s diligence requirement.[19] Further, many of Austin's claims turn on conflicting expert opinions.[20] Jurists of reason can debate whether the district court abused its discretion by denying an evidentiary hearing.[21] We grant a COA on this issue.

## V

Austin argues that the district court erred in holding that under 28 U.S.C. § 2254(e), the court could not construe the factual allegations in Austin's response to the State's motion for summary judgment in Austin's favor (Issue 2). The district court reasoned that Austin's factual allegations had been adversely resolved by express or implicit findings of the state trial court and

---

[18] *See* 28 U.S.C. § 2254(e)(2) (barring an evidentiary hearing if a petitioner fails "to develop the factual basis of a claim in State court," subject to exceptions not relevant here).

[19] *Cf. Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("[*I*]*n the usual case* . . . the prisoner [must], at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." (emphasis added)).

[20] *Cf. Hall v. Quarterman*, 534 F.3d 365, 371-72 (5th Cir. 2008) (per curiam).

[21] *See Landrigan*, 550 U.S. at 474 (explaining that a district court must consider whether a "hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief").

that Austin had failed to demonstrate by clear and convincing evidence that the presumption of correctness in § 2254(e)(1) should not apply.

Austin argues that our court's decision in *Smith v. Cockrell*[22] is not controlling. In that case, we explained that the ordinary summary judgment standard applies in a habeas proceeding only to the extent that it does not conflict with the habeas statutes.[23] Therefore, "§ 2254(e)(1)—which mandates that findings of fact made by a state court are 'presumed to be correct'—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party."[24]

Austin contends that *Smith*'s modified summary judgment standard is dicta. Although our opinion in *Smith* did not mention the inapplicability of the "light most favorable" standard when discussing the evidence, it is clear that we did not view the evidence in the light most favorable to Smith.[25] The discussion and application of §2254(e)(1) in *Smith* is not dicta.

Austin contends that *Smith* conflicts with our decision in *Clark v. Johnson*.[26] But *Clark* held only that summary judgment rules apply in habeas proceedings "as a general principle."[27] We noted that the district court viewed the facts in the light most favorable to Clark,[28] but we did not discuss the interaction between § 2254(e)(1) and the light-most-favorable standard. By the

---

[22] 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

[23] *Id.*

[24] *Id.*

[25] *See id.* at 682.

[26] 202 F.3d 760 (5th Cir. 2000).

[27] *Id.* at 764, 768.

[28] *Id.* at 768.

No. 13-70024

terms of § 2254(e)(1), *Smith*'s modified summary judgment standard applies only when a state court has made a specific factual finding, not to the entire case. *Clark* is consistent with *Smith*.

We note that in *Smith*, the Texas courts denied habeas relief on the merits. However, in the present case, the Texas courts did not consider Austin's habeas claims on the merits. Although the state trial court made factual findings regarding Austin's competency, Austin contends that he has presented evidence that the state trial court's evaluation of Austin prior to trial and prior to waiver of appellate counsel was inadequate. Jurists of reason could debate whether the federal district court correctly applied the summary judgment standard in the present case, and we grant a COA on Issue 2.

**VI**

Austin asserts in Issue 3 that the federal district court erred in crediting and relying upon evidence offered by the State in its summary judgment motion and attached affidavits. Austin argues that the State attached an affidavit from an expert witness, Dr. Brown, stating that new information not available at the time of trial would not have changed his opinion and that he continues to believe that Austin was competent. Austin argues that this opinion is directly rebutted by his experts. He argues that no court, including the state trial court, heard his experts' testimony, there was no opportunity to cross-examine Dr. Brown, and there is no basis for assessing the credibility of experts. Austin asserts that summary judgment is not available even under a clear and convincing standard if the non-movant (in this case Austin) is able to present testimony that, if accepted, would entitle him to relief. Austin asserts that the federal district court relied upon the State's new evidence and ignored Austin's new evidence regarding Austin's competency, waiver of counsel, guilty pleas, *Brady* claims, and claim of ineffective assistance of counsel at a *Faretta* hearing. Austin further contends that the federal district

10

No. 13-70024

court adopted the State's claims regarding the circumstances of Austin's confinement and the effect of these circumstances on his mental health in spite of factual disputes.

These arguments assert that the federal district court's procedure was tainted, and we are persuaded by this court's reasoning in an unpublished decision[29] that they are not separate grounds for relief from the state court judgment. We will consider these arguments in connection with Austin's substantive claims.

## VII

Austin argues that the district court erroneously applied § 2254(e)(1)'s[30] deferential standard to questions of law and mixed questions of law and fact (Issue 4). Austin contends that the district court applied § 2254(e)(1) to the state court's conclusions that Austin was competent to waive counsel, to plead guilty, and to stand trial.

We held in *United States v. McKnight* that

> [w]hether a defendant "suffers from a mental disorder or incapacitating mental illness is a question of fact reviewed under the clearly erroneous standard" but this Court takes a "hard look" at the ultimate competency finding. *Moody v. Johnson*, 139 F.3d 477, 482 (5th Cir. 1998) (citation omitted). This Court reviews a district court's decision regarding competency of a defendant "to stand trial, when a hearing has been conducted in federal court, as a mixed question of law and fact." *Id.*[31]

In *McKnight*, a direct criminal appeal, we concluded that because the district court did not clearly err in relying on expert testimony, even though

---

[29] *Kelly v. Dretke*, 111 F. App'x 199, 201 n.1 (5th Cir. 2004).

[30] 28 U.S.C. § 2254(e)(1) (requiring a petitioner to rebut the presumption of correctness that attaches to a state court's "determination of a factual issue" by clear and convincing evidence).

[31] 570 F.3d 641, 648 (5th Cir. 2009).

No. 13-70024

that testimony was sharply disputed by other expert testimony, the district court did not abuse its discretion in denying a defendant's motion to withdraw his guilty plea on the basis that he was mentally ill and incompetent at the time that he pled guilty.

Reasonable jurists could debate whether the district court in the present case applied the correct standard under AEDPA in examining the state trial court's determinations that Austin was competent to waive counsel, to plead guilty, and to stand trial. We grant a COA on this issue.

## VIII

Austin faults the state trial court for failing to empanel a jury to determine competency in accordance with Texas law. But federal habeas relief is unavailable for state law violations.[32]

Within the same issue, Austin contends that the trial court never made a finding that Austin was competent to stand trial and therefore that the federal district court erred in deferring to a finding of competence to stand trial (Issue 5). Austin acknowledges that the state court found him competent to waive counsel and to represent himself at trial and subsequently found Austin competent to enter a plea of guilty. Competency to waive counsel or plead guilty is a two-part inquiry.[33] First, the defendant must be "competent to stand trial."[34] Second, the waiver or guilty plea must be "knowing and voluntary."[35] Because the state trial court accepted Austin's waiver of counsel and guilty plea, the question is whether the court determined Austin was competent to stand trial.

---

[32] *E.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

[33] *Godinez v. Moran*, 509 U.S. 389, 401 (1993).

[34] *Id.* at 400.

[35] *Id.*

Austin's state trial counsel requested a competency evaluation. An expert was appointed by the court to conduct that evaluation, and the expert concluded that Austin was competent to stand trial. At the beginning of Austin's *Faretta* hearing, counsel stated that he had always believed that Austin was competent to stand trial; he explained that he only requested an evaluation "out of an abundance of caution." The state trial court judge noted that Dr. Brown's evaluation was "probative information" in making the decision to allow Austin to represent himself. Dr. Brown expressly concluded that Austin was competent to stand trial. The judge also questioned Austin:

> THE COURT: Have you ever been declared mentally incompetent?
>
> [AUSTIN]: No, ma'am.
>
> THE COURT: Have you ever been treated for any mental health disorder?
>
> [AUSTIN]: No, ma'am.
>
> . . .
>
> THE COURT: . . . Ever have any mental health problems while you were in the Army?
>
> [AUSTIN]: No, ma'am.
>
> THE COURT: Ever seek any mental health counseling while you were in the Army?
>
> [AUSTIN]: No, ma'am.

After further questioning, the state court found that Austin could "understand the implications and dangers of self-representation." The court also found that Austin had been "informed of the general nature of the offense charged and the possible penalties, although the Court finds he is fully aware of those."

Competency to stand trial turns on a defendant's "capacity to understand the nature and object of the proceedings against him, to consult with counsel,

No. 13-70024

and to assist in preparing his defense."[36] The court's findings, explicitly relying on Dr. Brown's evaluation concluding Austin was competent, reflect that the court determined that Austin was competent to stand trial.[37] We deny a COA on this issue.

## IX

In Issue 6, Austin asserts that the deferential standard of review of factual determinations required by § 2254(e)(1) should not have been applied to the state trial court's findings of competence to plead guilty, stand trial and waive counsel because inadequate procedures were utilized by the state trial court in determining competence. Because this issue is intertwined with Issues 8, 9 and 10, on which we grant a COA *infra*, we grant a COA on issue 6 as well.

## X

Austin asserts in Issue 7 that the district court erred in holding that habeas relief should not be granted even if the state trial court failed to provide adequate procedural due process in determining Austin's competency to stand trial because Austin failed to demonstrate by clear and convincing evidence that he was incompetent to stand trial. Austin asserts that this issue in our court pertains to Claims II and III that he asserted in the federal district court.

Austin contends that when a bona fide doubt as to competence exists and an inadequate inquiry was made, relief should be granted even if the petitioner has not proven his incompetence to stand trial. Austin cites the Supreme Court's decisions in *Pate v. Robinson*[38] and *Dusky v. United States*,[39] and

---

[36] *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

[37] *See Godinez*, 509 U.S. at 401 n.12 ("The focus of a competency inquiry is the defendant's . . . *ability* to understand the proceedings.").

[38] 383 U.S. 375 (1966).

[39] 362 U.S. 402 (1960).

14

decisions of this and another circuit court.[40]  Austin relatedly contends that the district court erred in denying relief under *Pate* unless Austin proved by clear and convincing evidence that he was incompetent.  Because reasonable jurists could debate whether the district court erred in this regard, we grant a COA on Issue 7.

## XI

In Issue 8 (Claim II), Austin argues that the district court erred in granting summary judgment on his claim that the state trial court denied due process by failing to conduct an adequate inquiry into his pre-trial competency. Austin discusses evidence that he contends raised a bona fide doubt as to his competency and notes that the state court *sua sponte* ordered a competency evaluation.  Austin contends that the state trial court's process thereafter was inadequate because the court proceeded on inadequate information and conducted no hearing to resolve conflicting evidence, there was no adversarial testing of the evidence, the competency evaluation failed to meet prevailing standards for forensic mental health assessments, and the state trial court's colloquy with Austin was shallow.  We grant a COA on this issue.

## XII

Austin asserts in Issue 9 (Claim III) that the district court erred in granting summary judgment on the claim that the state trial court denied due process when it failed to make adequate further inquiries into competence when new evidence came to light.  Austin argues that after the first *Faretta* hearing, prior to and during trial, additional information came to light, including: that Austin had suffered from serious mental illness from early childhood, he had been subject to prior mental health assessments as a juvenile

---

[40] *Roberts v. Dretke*, 381 F.3d 491, 497-98 (5th Cir. 2004); *McGregor v. Gibson*, 248 F.3d 946, 952-54 (10th Cir. 2001) (en banc).

and in the army, he had pled not guilty by reason of insanity to an earlier offense and a psychologist had testified in support of that plea, he had a history of suicide attempts, he was seeking the death penalty as a method of suicide, he had lied to the state trial court in the colloquy about his competency, and he was consulting a psychologist while awaiting trial.

We grant a COA on this issue.

## XIII

In Issue 10 (Claims IV and XXIV), Austin contends that the district court erred in granting summary judgment on the claim that he was subjected to a capital trial and sentenced to death when not competent in violation of his substantive due process rights.  Austin contends that there is evidence from experts that at the time of trial and of his waivers of counsel, Austin suffered from severe depression and active suicidality in combination with pre-frontal lobe dysfunction that drove him to seek the death penalty irrationally and involuntarily as a means of committing suicide and deprived him of his ability to make rational decisions in relation to his case.  Austin contends that the federal district court failed to refer to any of Austin's affirmative evidence of incompetence and instead relied on the State's evidence.  We grant a COA on this issue.

## XIV

Austin asserts in Issue 11 that the district court erred in granting summary judgment on his claims that the State violated *Brady v. Maryland*[41] by failing to produce certain records pertaining to his competency to stand trial, which were in the custody of the Texas Department of Criminal Justice (TDCJ).  The prosecution violates *Brady* if it suppresses evidence that is

---

[41]  373 U.S. 83 (1963).

No. 13-70024

favorable to the defense, material either to guilt or punishment, and not discoverable through due diligence.[42]

Austin's *Brady* claim fails because he cannot show that the State suppressed the TDCJ records. "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence."[43] Austin argues that a defendant with a history of mental illness cannot be expected to assist counsel in locating records detailing his condition.[44] But Austin's mental health was a prominent issue throughout the state trial proceedings, and the TDCJ records were readily obtainable through ordinary discovery. Had Austin or counsel wished to pursue a competency defense, they could have requested the records from the State. We deny a COA on this issue.

## XV

Austin asserts three claims of ineffective assistance of counsel (Issues 12, 13 and 14).

## A

Austin alleges that appointed counsel Mack Arnold, who briefly represented Austin before he was allowed to proceed *pro se*, had an actual conflict of interest (Issue 12 (Claim VII)). Arnold informed the sheriff's office that Austin had expressed an intent to kill another inmate, and as a result, Austin was moved to administrative segregation. Austin argues that Arnold did not inform him of this disclosure to the sheriff's office and did not honor his requests to assist him in being removed from segregation. Arnold told Austin

---

[42] *See Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

[43] *See Reed v. Stephens*, 739 F.3d 753, 788 (5th Cir. 2014) (quoting *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002)).

[44] *See United States v. Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992).

that there were other explanations for the segregation. This segregation increased Austin's suicidal depression, he contends.

A defendant has a right to counsel free from conflicts of interest.[45] But an attorney's duty to advocate for his client is "limited to legitimate, lawful conduct" and counsel cannot "assist[] the client in . . . violating the law."[46] Arnold's decision to report Austin's threat did not violate Austin's rights.

With regard to Arnold's actions after the move to segregation, the right to counsel applies to "pretrial critical stages that are part of the whole course of a criminal proceeding . . . in which defendants cannot be presumed to make critical decisions without counsel's advice."[47] Austin's placement in segregation occurred wholly outside the context of his trial—the sheriff, not the court, placed him in segregation. Further, Austin's placement in segregation did not require him to make critical decisions about his pending case. We deny a COA on this claim (Issue 12).

**B**

Austin had appointed counsel for seven months, until his request to proceed *pro se* was granted. He asserts in Issue 13 (Claim VIII) that his counsel was ineffective during this period of time with respect to the determination of competency to stand trial and to waive counsel. Austin argues that no discovery or investigation regarding Austin's competency was conducted by his counsel and that at the *Faretta* hearing, counsel asked Austin only four questions. Those questions were aimed at preserving counsel's reputation, Austin contends, and were asked only after the state trial court had ruled that Austin was competent.

---

[45] *Wood v. Georgia*, 450 U.S. 261, 271 (1981).

[46] *Nix v. Whiteside*, 475 U.S. 157, 166 (1986).

[47] *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).

No. 13-70024

The district court concluded that even were there ineffective assistance of counsel in this regard, there was no prejudice because the evidence supported the state trial court's conclusion that Austin was competent. Austin contends that he was not required to prove that if counsel had been adequate, the trial court would likely have found him competent. He asserts that he was only required to establish that confidence in the outcome of the competence determination is undermined by counsel's failure to perform adequately.

This issue is intertwined with other issues regarding the competency proceedings in the state trial court, and we therefore grant a COA on issue 13.

**C**

In Issue 14 (Claim VIII), Austin asserts that the district court erred in applying *Strickland v. Washington*[48] rather than *United States v. Cronic*[49] when the court granted summary judgment on the claim that counsel was ineffective regarding the question of Austin's competency and waiver of counsel. Austin contends that his attorney's lack of preparation for and performance at the *Faretta* hearing amounted to a constructive denial of counsel and therefore that prejudice should be presumed based on *United States v. Cronic.*

Unlike a claim under *Strickland v. Washington*, prejudice is presumed in certain circumstances described in *Cronic*. A *Cronic* violation occurs if a defendant is denied counsel at a critical stage of trial or if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing."[50] The rationale of *Cronic* applies only when counsel's failure to test the prosecutor's

---

[48] 466 U.S. 668, 692 (1984).

[49] 466 U.S. 648 (1984).

[50] *Id*. at 659.

case is "complete"; counsel must fail to oppose the prosecution "throughout the . . . proceeding as a whole."[51]

Austin points to several decisions that have analyzed counsel's performance in pre-trial proceedings under *Cronic*. First, he cites the Tenth Circuit's opinion in *United States v. Collins*.[52] In *Collins*, *Cronic* applied because defense counsel remained silent during the competency hearing due to his pending motion to withdraw.[53] Arnold, however, participated in Austin's hearing, though his questions did not lend support to a finding that Austin was incompetent. Arnold additionally expressed his opinion at the hearing that Austin was competent.

Austin also relies on the Third Circuit's decision in *Appel v. Horn*.[54] In that case, because the defendant attempted to waive counsel, his appointed attorneys did not believe they were actually his counsel.[55] The court refused to accept the defendant's waiver of counsel and ordered a psychiatric evaluation.[56] The attorneys failed to investigate, did not provide the court-appointed psychiatrist with any information, and did not attempt to litigate the competency determination in any way—in short, they "did nothing to investigate or prepare for the competency determination."[57]

In the present case, Arnold sought expert evaluation: he filed a motion explaining that Austin had "exhibited some highly unusual behavior in the last several months" and requested that Brown evaluate Austin. Arnold noted that

---

[51] *Bell v. Cone*, 535 U.S. 685, 696-97 (2002).

[52] 430 F.3d 1260 (10th Cir. 2005).

[53] *Id.* at 1266.

[54] 250 F.3d 203 (3d Cir. 2001).

[55] *Id.* at 215.

[56] *Id.* at 206.

[57] *Id.* at 215-16.

No. 13-70024

Brown's assistance would be vital and would impact aspects of the case, including mental-health defenses. Unlike *Appel*, where the court appointed the expert *sua sponte* and counsel did nothing, Arnold initially sought an expert to raise mental-health-related issues. Arnold's failure to contest competency was not "complete." We deny a COA on Austin's *Cronic* claim.

## XVI

In Issue 15 (Claims X, XI and XVIII), Austin asserts that the district court erred in concluding that he was required to prove by clear and convincing evidence that his waivers of counsel and his guilty plea were voluntary. Austin contends that no deference to factual findings was due under § 2254(d) because his state habeas claims were denied on procedural grounds and that waiver of a constitutional right is not a determination of fact subject to a presumption of correctness under § 2254(e)(1). He further asserts that in collateral review of a waiver of counsel, it is incumbent upon the state to prove an intentional relinquishment or abandonment of a known right or privilege. He cites the Supreme Court's decision in *Brewer v. Williams*,[58] and three circuit court decisions.[59] This issue is intertwined with other issues regarding Austin's competency as to which we have granted a COA, and we grant a COA as to this issue as well.

## XVII

In Issue 16 (Claims X and XVIII), Austin contends that his waivers of trial, appellate, and post-conviction counsel were not knowing, voluntary or intelligent.

---

[58] 430 U.S. 387, 404 (1977).

[59] *Sanchez v. Mondragon*, 858 F.2d 1462, 1464 (10th Cir. 1988), *overruled on other grounds by United States v. Allen*, 895 F.2d 1577 (10th Cir. 1990); *Myers v. Rhay*, 577 F.2d 504, 509 (9th Cir. 1978); *Felder v. McCotter*, 765 F.2d 1245, 1249 (5th Cir. 1985), *abrogated on other grounds by Patterson v. Illinois*, 487 U.S. 285 (1988).

No. 13-70024

With regard to trial counsel, he argues that even if he was competent to stand trial, competence is only one aspect of a defendant's state of mind. Austin contends that his waiver of trial counsel was not knowing, intelligent or voluntary due to his mental illness and the conditions of his confinement. He also contends the state trial court asked only four "pro forma" questions at the hearing on Austin's motion to proceed *pro se* and that Dr. Brown, who evaluated Austin's competence, made no reference to Austin's "psychologically aversive conditions of confinement."

Regarding waiver of appellate and post-conviction counsel, Austin contends that the state trial court's waiver colloquy was inadequate. When the court asked Austin whether he had been treated for any mental health disorders, Austin said "no," and the court did not question him further even though the court had heard evidence that Austin received mental health treatment on numerous occasions.

Because the resolution of these issues is intertwined with other issues on which we have granted a COA, we grant a COA as to Issue 16.

## XVIII

Austin argues in Issue 17 (Claim XI) that his guilty plea was not voluntarily and intelligently made. He asserts that he was incompetent and not in control of his mental faculties when he pled guilty. He also asserts that conditions of his confinement resulted in State-induced emotions that negated the voluntariness of his plea and that his plea was the product of mental illness and coercive and unconstitutional conditions in which he was confined. This issue is inseparable from others regarding Austin's competency and mental state, and we grant a COA as to this issue.

## XIX

Austin contends that the state trial court violated his right to a trial by jury when it directed a verdict at the guilt phase of trial and that the federal

district court erred in granting summary judgment in favor of the State on this claim (Issue 18 (Claim XIII)).  The state trial court accepted Austin's plea after a lengthy colloquy, during which the court asked Austin whether he understood "that in entering a plea of guilty to capital murder, you are essentially admitting each and every element necessary to establish your guilt for the offense of capital murder."  Austin responded, "Yes, ma'am."  Austin asserts, however, that he was not told that this plea would waive his right to a jury trial and notes he was told that the law provided that he must have a jury trial and that he would receive a jury trial.  The issue of his guilt was submitted to the jury, and the court directed the jury to return a verdict of guilty.  A written judgment was entered stating that the right to trial by jury had not been waived and that the jury verdict found Austin guilty.

Following Austin's guilty plea, the state court proceeded with a jury trial on the punishment phase.  After the close of the evidence regarding punishment, the court instructed the jury to find Austin guilty on the verdict form and then to deliberate regarding the appropriate punishment.  The jury answered questions that determined the sentence that would be imposed.  Austin was informed that the trial was being conducted for the specific purpose of having the jury determine Austin's punishment.  Reasonable jurists could not debate whether Austin was unconstitutionally denied a jury trial on the question of his guilt in light of his plea of guilty.  We deny a COA on this issue.

## XX

Austin asserts in Issue 19 (Claims XV and XVI) that his Sixth and Fourteenth Amendment rights were violated because the jury was not unbiased and that the district court erred in granting summary judgment on this issue.  He contends that several jurors stated in voir dire that they could consider mitigating evidence but that in post-trial interviews, they stated that

23

mitigating evidence was irrelevant in certain types of cases. Austin asserts that these jurors concealed actual bias.

To establish a claim of jury bias arising from voir dire, a party must show that "a juror failed to answer honestly a material question on *voir dire*, and . . . that a correct response would have provided a valid basis for a challenge for cause."[60] A capital murder defendant may challenge for cause the inclusion of a juror who will automatically vote to impose the death penalty.[61]

The federal district court held that Austin had waived this issue because he had failed to challenge and question the jurors during voir dire. In this court, the State additionally contends that the post-trial interviews and unsworn statements of jurors are inadmissible under Federal Rule of Evidence 606(b), which limits the admissibility of juror testimony during an inquiry into the validity of a verdict. Specifically, Rule 606(b) prohibits a juror from testifying "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict."[62] Here, the post-trial interviews concern the honesty of statements made by the jurors during voir dire—not statements made during deliberations, the effect of something on the jurors' votes, or the jurors' mental processes concerning the verdict. Rule 606(b) does not bar admission of post-trial statements to prove that the jurors failed to answer a material question honestly during voir dire.[63]

---

[60] *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

[61] *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

[62] FED. R. EVID. 606(b)(1).

[63] *Compare Warger v. Shauers*, 135 S. Ct. 521, 524 (2014) (explaining that Rule 606(b) renders inadmissible an affidavit containing a juror's statements made during deliberations that allegedly revealed the juror's dishonesty during voir dire), *with Hatten v. Quarterman*, 570 F.3d 595, 602-03 (5th Cir. 2009) (analyzing an affidavit containing a juror's post-trial statements and concluding that the affidavit did not establish that he dishonestly answered any material question during voir dire). *See generally* CHRISTOPHER B. MUELLER & LAIRD C.

No. 13-70024

The State also submits that Austin waived his jury bias claims by failing to object to the inclusion of any of the jurors during voir dire. But claims based on actual bias, as opposed to implied bias, are not waived by a failure to object during voir dire.[64] Because Austin contends the jurors were actually biased, his jury bias claims are not waived.

Juror impartiality is a question of fact.[65] Upon empaneling a juror, the trial court may have made an implicit finding of impartiality entitled to deference under 28 U.S.C. § 2254(e)(1).[66] We need not resolve that issue at this stage. We grant a COA on the jury bias claims relating to Jurors Gibbs, Condon, Erwin, Finnegan, and Tamayo, because reasonable jurists could debate whether these jurors were actually biased, in light of their statements in voir dire and in post-trial affidavits.

We deny a COA on the jury bias claims relating to Jurors Maddox and Phillips. Juror Maddox stated during voir dire that he could vote to impose either a life or death sentence, as the evidence warranted. In his post-trial interview, he said:

> I believe that when somebody is found guilty of very violent murders especially against children and premeditated or repeated crimes the death penalty should be imposed. If it is shown that a person has a serious mental illness or defect this is a situation where the jury should consider not imposing the death penalty.

---

KIRKPATRICK, 3 FEDERAL EVIDENCE § 6:21 (4th ed. 2015) ("In its most common form, misconduct occurring before deliberations (and before trial) involves giving false answers on voir dire . . . . Misconduct of this sort can be proved by means of affidavits or testimony by jurors, although . . . [not] by means of statements made during deliberations by the juror in question." (footnotes omitted)).

[64] *See United States v. Wilson*, 116 F.3d 1066, 1086-87 (5th Cir. 1997), *rev'd on other grounds*, *United States v. Brown*, 161 F.3d 256, 258 (5th Cir. 1998) (en banc).

[65] *See Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

[66] *See Virgil v. Dretke*, 446 F.3d 598, 610 n.52 (5th Cir. 2006) (explaining that trial court made implicit findings of impartiality by accepting prospective jurors, and that § 2254(e)(1) deference applies to those findings).

No. 13-70024

Maddox's statement merely evinces an affirmative willingness to consider mental illness as a mitigating factor.  It does not demonstrate an unwillingness to consider other mitigating evidence.  Reasonable jurists could not disagree that Austin has failed to rebut the implied finding of impartiality by clear and convincing evidence with respect to Maddox.  We deny a COA on this claim.

Juror Phillips also indicated she could impose a life or death sentence as warranted by the evidence.  In her post-trial statement, she said:

> [I]f you kill a child and know what you are doing and you are convicted by a jury of your peers and there's overwhelming evidence, then that's it, you should get the death penalty.  If, however, you don't know what you are doing when you commit the murder you should be taken off the streets and given psychiatric help for the rest of your life.

Phillips's statement, like Maddox's, does not show an unwillingness to consider all constitutionally relevant mitigating evidence.  We also deny a COA on this claim.

## XXI

In Issue 20 (Claims XIX and XX), Austin alleges that he was denied his right to meaningful appellate review because transcripts of hearings pertaining to his competency and the voluntariness of his waiver of counsel are not in the record.  He contends that the Eighth Amendment mandates comprehensive direct review of capital convictions, asserting that appellate review is an indispensable safeguard against arbitrariness.  To establish his claim, Austin must show the omission of a "substantial and significant portion of the record."[67]

Austin argues that the trial court relied on information discussed at meetings, titled "agreed setting" meetings, in ascertaining Austin's

---

[67] *See United States v. Delgado*, 672 F.3d 320, 343 (5th Cir. 2012) (en banc) (quoting *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir. 1977)).

competence. During the *Faretta* hearing, the trial court alluded to a prior conversation it had had with Austin, during which Austin had expressed his desire to proceed *pro se*. While Austin now complains that this prior meeting was unrecorded, the record demonstrates that at that meeting, the trial court explained that Austin would need to undergo a psychological evaluation and receive a full *Faretta* hearing prior to waiving counsel. In other words, at the prior meeting, the court cautioned Austin that certain procedures needed to be followed before it could find him competent to proceed *pro se*. The record is wholly inconsistent with Austin's claim that the court relied on any untranscribed conversation to arrive at its competency finding.

Austin also argues that the court admitted relying on an unspecified, untranscribed conversation following its acceptance of Austin's guilty plea, prior to the punishment trial. At that proceeding, the trial court explained that its competency finding was based on the court-ordered psychological evaluation and on "prior conversations with Mr. Austin [and] his persistence in entering his plea of guilty before the jury for many months." Consistent with the court's explanation, it made this competency finding nearly six months after the initial *Faretta* hearing. Additionally the record contains several letters Austin wrote to the trial court professing his competence and expressing his desire to waive counsel and plead guilty. The record conclusively establishes that the trial court's competency determination was made based on evidence presented at transcribed hearings. Austin has failed to demonstrate the absence of a substantial and significant portion of the record.[68] We deny a COA.

---

[68] *See United States v. Gieger*, 190 F.3d 661, 667 (5th Cir. 1999) (holding that failure to transcribe seventy-two bench conferences did not constitute reversible error).

No. 13-70024

## XXII

In issue 21 (Claims XXXI, XXXII and XXXIII), Austin argues that the method of execution to be used by the State constitutes cruel and unusual punishment in violation of the Eighth Amendment.  This challenge fails because we have repeatedly upheld Texas's execution protocol, which calls for the administration of a lethal dose of a single drug, pentobarbital.[69]  The Supreme Court's recent decision in *Glossip v. Gross* does not change our analysis.[70]  Because our precedent forecloses Austin's challenge to Texas's current single-drug protocol, we deny a COA.  Because of this disposition, we do not address Austin's contention that he may challenge in a habeas petition a state's drug protocol for lethal injections in carrying out a death sentence or his contention that he is entitled to discovery regarding the State's drug protocol.

## XXIII

We note that the parties agreed that § 2254(d)'s deferential standard does not apply to any of Austin's claims.  However, we have held that AEDPA's standard of review cannot be waived.[71]  In their briefing on the merits, the parties should address whether the state trial court's determination that Austin was competent triggers the application of § 2254(d) to his substantive competency claim.

\*     \*     \*

For the foregoing reasons, IT IS ORDERED that Austin's request for a COA is GRANTED IN PART.  It is GRANTED as to Issues 1, 2, 3, 4, 6, 7, 8, 9,

---

[69] *See, e.g., Ladd v. Livingston*, 777 F.3d 286, 289 (5th Cir. 2015), *cert. denied*, 135 S. Ct. 1197 (2015).

[70] *See Glossip v. Gross*, 135 S. Ct. 2726 (2015); *see also Ladd*, 777 F.3d at 290.

[71] *See Ward v. Stephens*, 777 F.3d 250, 257 & n.3 (5th Cir. 2015).

10, 13, 15, 16, 17 and 19 (with respect to Jurors Gibbs, Condon, Erwin, Finnegan, and Tamayo, only).

Austin's request for a COA is DENIED IN PART. It is DENIED as to Issues 5, 11, 12, 14, 18, 19 (with respect to Jurors Maddox and Phillips only), 20 and 21.[72]

---

[72] We note that Austin has submitted to the court multiple letters expressing a desire to be quickly executed. In September 2014, Austin asked to abandon his appeal. Austin's counsel, in a response requested by this court, stated that each time Austin had expressed a desire to drop his appeal and be executed, he had changed his mind and instructed counsel to continue the appeal, and that "Austin suffers from a serious mental illness that is both cyclical and exacerbated by the conditions of confinement." We remanded to the district court for the limited purpose of making findings as to Austin's competency to withdraw his appeal. Before the district court held its competency hearing, Austin withdrew his motion to withdraw his appeal and asked this court to expedite his COA review. Since that time, Austin has sent the court two more *pro se* letters stating a desire to be executed and for his appeal to be denied. In his most recent letter, Austin stated, "I repeat again my refusal to cooperate with any type of mental health examination."

As we explained in our opinion remanding to the district court for a hearing on Austin's competence, "when a death-row inmate seeks to withdraw his habeas petition, 'a habeas court must conduct an inquiry into the defendant's mental capacity, either *sua sponte* or in response to a motion by petitioner's counsel, if the evidence raises a bona fide doubt as to his competency.'" *Austin v. Stephens*, 596 F. App'x 277, 281 (5th Cir. 2015) (quoting *Mata v. Johnson*, 210 F.3d 324, 329-30 (5th Cir. 2000)).